Judge Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR22-001 TL |
|---|---|
| Plaintiff | |
| v. | UNITED STATES SENTENCING MEMORANDUM |
| SHABNAM DAWN PILISUK, | |
| Defendant. | |

The United States of America, through Tessa M. Gorman, United States Attorney for the Western District of Washington, and Laura Harmon, Special Assistant United States Attorney, and Matthew Hampton, Assistant United States Attorney, respectfully submits the following Sentencing Memorandum.

The United States respectfully recommends the Court impose a custodial sentence of 45 years, to be followed by a lifetime of supervised release. Shabnam Dawn Pilisuk is scheduled for sentencing on October 2, 2024 at 10:00 a.m. based upon the guilty verdicts returned but the jury on March 2, 2023.

United States' Sentencing Memorandum - 1
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. BACKGROUND

### A. Offense Conduct

Pilisuk first introduced the concept of incest to MV1 by normalizing an incestuous relationship on the television show Game of Thrones. Dkt. 148 at 39. She also told MV1 that she owned an incest website that included pedophiles but that these pedophiles "weren't people who would do pedophile things to children." *Id.* at 40. She also normalized her sexual relationship with her father to MV1. *Id.* at 41. She also groomed him by saying that children could consent to sex. *Id.* at 41–42.

The first time she abused him, they were watching Game of Thrones in Seattle and they touched each other's genitals while sitting on the couch under a blanket. *Id.* at 42. He estimated that Pilisuk had sexual intercourse with him or performed oral sex on him approximately five times at that location. *Id.* at 45.

MV1 also recounted going on a road trip to Las Vegas from Seattle. *Id.* at 46. While in Nevada, she raped MV1 in the hotel room while her husband went to Death Valley by himself. *Id.* at 47. MV1 said Pilisuk took photos of him while on that road trip and she showed MV1 that she sent them to someone. *Id.* at 48. He believed the person she sent them to was "Joe" (Spencer Wigdor), who was also a member of her incest website. *Id.* at 48. Pilisuk made MV1 feel like he had consented to the photos being taken by her. *Id.* MV1 identified the hand touching his penis in one of the photos was Pilisuk's. The evidence showed this trip happened in June or July of 2017 when MV1 was 11 years old.

MV1 also discussed a road trip to Colorado where they went to a nudist resort. *Id.* at 49. While in the hot tub at the nudist resort, Pilisuk touched MV1's genitals and he touched hers. *Id.* at 49. Data and communications from Pilisuk's devices and communications confirm this trip occurred in August and September of 2018, when MV1 was 12 years old.

United States' Sentencing Memorandum - 2
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

She told him he could not tell anyone about their sexual interactions. *Id.* at 45. MV1 recalled Pilisuk was scared of people hearing her talk about the sexual acts so she "unplugged all of the devices in the house," and "talked to me and Josh [her husband] to get our stories straight, to make sure we were all on the same page." Pilisuk told MV1 and her husband that "after a certain amount of time, she couldn't be charged for these crimes," and MV1 remembered that amount of time to be 10 years. *Id.* at 46.

Pilisuk tried not to keep "any real child pornography on any of her devices," but showed MV1 computer-generated child pornography on her Kik account. *Id.* at 50.

MV1 recounted why he had denied that Pilisuk had abused him previously: "At the time I believed that she hadn't done anything wrong," and "I felt the need to protect her." *Id.* at 52. He talked about how the memories had been locked away and when he remembered what happened, "it felt really wrong." *Id.* at 53.

MV1's counselor also testified at trial and noted a discussion she had with Pilisuk where Pilisuk accused "Joe" of taking photos of MV1 that were found on her devices in a police raid on her home. *Id.* at 66–67. She talked about MV1's progress in counseling and how initially his "sole desire was about being able to see his mom." *Id.* at 68. She discussed how his behavior changed and he was crying during visits with Pilisuk and seemed depressed. *Id.* at 70–71. In November of 2021, while on a Zoom call with the counselor, he disclosed the abuse by Pilisuk and collapsed crying. *Id.* at 72. He came in for an in person meeting a few days later where he further disclosed abuse in the form of post-its he had written. *Id.* at 74. He went into the fetal position behind her couch and pulled a blanket over his head. *Id.* He cried and hyperventilated in that position while the counselor reminded him that the abuse was not happening now, it was the very real memories he was reliving and it was normal. *Id.* at 75.

Tyrone Becker's testimony shed light on Pilisuk's deviant behavior. He described meeting Pilisuk online on an incest website based in Holland in 2016-2017. *Id.* at 98, 101. He recounted that Pilisuk created and operated a website called "Community

United States' Sentencing Memorandum - 3
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Incest," after a prior incest website they were members of had shut down. *Id.* at 105–106. The first user on the website was Pilisuk, and the second was MV1. *Id.* at 107. Pilisuk later made Becker an administrator of the website because of his tech background and that they were close friends. *Id.* The website included both adult-adult and child-adult incest relationships. *Id.* at 108–109. Pilisuk preferred to communicate with Becker on Wire because it was "a more secure chat system that was encrypted," as compared to the chat feature on her website. *Id.* at 110. Pilisuk was concerned enough about the authorities learning of her website, that she discussed moving the servers to the Netherlands. *Id.* at 113–114. While on a road trip to Nevada, Pilisuk sent Becker photos of MV1 in his underwear and then completely naked, and another photo of MV1's penis with a hand touching it. *Id.* at 123. After Pilisuk returned home, she told Becker that she had just given MV1 a blowjob. *Id.* at 124. She knew that Becker had a sexualized interest in children and allowed him to be alone with MV1 when MV1 was 11 years old. *Id.* at 125. MV1 told Becker that "if we do anything, we have to film it so that she [Pilisuk] can watch it afterwards." *Id.* at 126.

In March 2019, Seattle Police Department served a search warrant on Pilisuk's residence and recovered several digital devices, including a Samsung Galaxy 8 phone and a Lenovo laptop belonging to Pilisuk. *Id.* at 7; Dkt. 55.1. These two devices were forensically examined and later determined to have child sexual abuse material. Law enforcement also discovered a Microsoft Surface laptop, which Pilisuk unlocked in her interview with law enforcement, which contained approximately 69 files of animated or computer-generated depictions of child sexual exploitation, as well as a PDF file titled "How to practice child love," which Is self-described as an "exclusive step-by-step guide for practicing safe and fun sex with children!" During execution of the warrant, Pilisuk confirmed being the owner and operator of the website and knowing Becker. Dkt. 6 at 7. She denied having inappropriate sexual contact with MV1 or possessing child sexual abuse imagery.

United States' Sentencing Memorandum - 4
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### B. Procedural History

On January 5, 2022, the grand jury returned a five count indictment against Pilisuk charging five counts of child sexual abuse and exploitation: (1) Aggravated Sexual Abuse of a Child under Twelve in violation of Title 18, United States Code, Sections 2241(c) and 2246(2); (2) Production of Child Pornography in violation of Title 18, United States Code, Sections 2251(a) and (e); (3) Transportation of a Minor with Intent to Engage in Criminal Sexual Activity in violation of Title 18, United States Code, Section 2423(a); (4) Transportation of a Minor with Intent to Engage in Criminal Sexual Activity in violation of Title 18, United States Code, Section 2423(a); and (5) Possession of Child Pornography in violation of Title 18, United States Code, Sections 2252(a)(4)9B) and (b)(2).

On February 8, 2023 the grand jury returned a superseding indictment to the same charges with additional specificity in the language. Trial began on February 27, 2023 and the jury returned verdicts of guilty as to all five counts on March 2, 2023. After trial, Pilisuk's attorney withdrew and Pilisuk requested a total of four continuances of the sentencing date that resulted in this sentencing over a year and a half after the verdict.

## II. SENTENCING GUIDELINES CALCULATIONS

### A. Offense Level

The Government largely concurs with the sentencing calculations of U.S. Probation, with one minor change noted below in italics.

Count 1: Aggravated Sexual Abuse of Child Under Twelve (Count 3 and 4 Group)

| | |
|---|---|
| Base Offense Level, U.S.S.G. §2A3.1(a)(1) | 38 |
| Custody or Care of Defendant, U.S.S.G. §2A3.1(b)(3) | +2 |
| Obstruction of Justice, U.S.S.G. §3C1.1 | +2 |
| Multiple Count Adjustment | +2 |
| Total: | 44 |

United States' Sentencing Memorandum - 5
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Count 2: Production of Child Pornography

| | |
|---|---|
| Base Offense Level, U.S.S.G. §2G2.1(a) | 32 |
| Minor Under 12, U.S.S.G. §2G2.1(b)(1) | +4 |
| Commission of Sexual Contact, U.S.S.G. §2G2.1(b)(2)(A) | +2 |
| Distribution, U.S.S.G. §2G2.1(b)(5) | +2 |
| Obstruction of Justice, U.S.S.G. §3C1.1 | +2 |
| Multiple Count Adjustment | +2 |
| Total: | 46 |

Count 5: Possession of Child Pornography

| | |
|---|---|
| Base Offense Level, U.S.S.G. §2G2.2(a)(1) | 18 |
| Minor Under 12, U.S.S.G. §2G2.2(b)(2) | +2 |
| Pattern of Abuse, U.S.S.G. §2G2.2(b)(5) | +5 |
| *Use of Computer, U.S.S.G. §2G2(b)(6)* | *+2* |
| Obstruction of Justice, U.S.S.G. §3C1.1 | +2 |

**B.     Criminal History Category**

Pilisuk has no other criminal convictions and thus has a criminal history score of 0 and a Criminal History Category of I.

**C.     Guidelines Range**

Based on a total offense level over 43, the guidelines imprisonment range for this offense is life.

**III.     FACTORS RELATED TO SENTENCING RECOMMENDATION**

The United States respectfully requests that the Court sentence the defendant to 45 years of confinement, followed by a lifetime of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to

United States' Sentencing Memorandum - 6
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C).  A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

### A. Nature and Circumstances, and Seriousness of the Offense

The seriousness of Pilisuk's crimes cannot be overstated: she raped and molested a child in her care, made him available for like-minded friends to also abuse him, and organized an online community in support of incest and child sexual abuse.  These horrific offenses demand far more than the statutory-minimum sentence.

Pilisuk's conduct is of the most reprehensible and serious of the crimes that come before this Court.  She destroyed MV1's childhood for her own sexual gratification.  She grossly abused a position of trust and care with him to an unimaginable degree.  It is unclear if or when he will ever be able to have a healthy, loving relationship in the future.  The Court had the opportunity to observe MV1 during his testimony.  To see his shame, guilt, and pain.  The Court could also observe his meek and broken demeanor.  She groomed, coerced, and gaslit him into believing this was normal and acceptable behavior.  She repeatedly, countless in the words of MV1, raped and molested him over several years, including abusing him on the road trips discussed at trial to other states.  MV1 was not free from abuse even while on vacation.

Even worse, she allowed and invited other individuals to perpetrate abuse on him.  She allowed like-minded friends from her network to come to her home, have unfettered and unsupervised access to him, and in some circumstances, they also abused and molested MV1 in light of these opportunities Pilisuk provided.  She continued to betray MV1's trust and subject him to this abuse.

That is not the end of her conduct in this case.  She founded, operated, and managed an incest website where she encouraged child abuse with other individuals.  She personally vetted those who wanted to join the website to ensure they were interested in

United States' Sentencing Memorandum - 7
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

incest. She took precautions to ensure she was not caught and demonstrated technological savvy to do so. She knew to unplug the digital devices for the "family meeting" to avoid passive recording by a Google home or Amazon Echo-type device. She also was largely successful at removing contraband depiction of child rape and abuse from her devices.

The severity of these crimes calls for a long sentence, but so too do the other statutory sentencing factors this Court must consider. Pilisuk is not a first-time offender. While she has no prior convictions due to her long period of control over MV1, her encouragement of this behavior to scores of others on her website demonstrate her danger. A 45-year custodial sentence, followed by lifetime supervision, would reflect the seriousness of her crimes, and protect the public from her.

**B.   History and Characteristics of the Defendant**

Pilisuk's self-reported issues in childhood and with mental health could be a mitigating circumstance. Based on that information, the Presentence Report places great weight upon her ACES score of 10. However, as noted in the link to the Center for Disease Control included by Probation, this number is a calculation of risk factors that "could impact health and well-being." CDC, About Adverse Childhood Experiences, https://www.cdc.gov/aces/about/index.html. The CDC notes that ACEs are common (about 64% experience at least one and 1 in 6 experience four or more), and that these experiences "can increase risk" of physical injury, chronic diseases, and toxic stress. *Id.* It also noted that individuals may have "unstable work histories as adults and struggle with finances, jobs, and depression throughout life." *Id.*

However, Pilisuk rose from the circumstances of her childhood. She got herself an education, learned a technical and complicated skill of computer coding, and had a career at T-Mobile. She owned a house in West Seattle and was working on her master's degree. She left Mr. Basmani and was in a happy marriage to Josh Pilisuk. She had come from the trauma of her childhood to a place of healthy stability.

United States' Sentencing Memorandum - 8
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

While committing these crimes, Pilisuk had a supportive spouse, a lucrative job, a comfortable residence, and sufficient financial resources. In other words, she was not lured or coerced through the unfortunate circumstances of childhood to commit these crimes. She went down this path of her own volition and with full knowledge of what she was doing. The fact that she was a victim of child sexual abuse should increase her empathy towards MV1, not justify his abuse. The research on empathy supports this analysis. "Theoretically, the closer that one's own personal victimization experience matches a victim's condition (i.e., relationship context), the more one should identify with that situation."[1] Indeed, "those who have experienced some type of sexual victimization report more empathy than those without such experience."[2]

In a study published in 2016, researchers conducted qualitative research on male victims of sexual abuse, inquiring why they had not perpetuated the abuse on others. "By far, the most commonly cited reason the participants gave for having not sexually offended was experiencing empathy for other people and having no desire to hurt others."[3] When asked to explain, participants in the study made statements such as "Experiencing pain is like putting your hand in the fire. You don't have to tell anyone twice that they are experiencing pain. I wouldn't want to stick someone else's hand in the fire. . . I'm aware of the pain and emotions that an abused person would go through and I don't want to put anyone else through that."[4] The study's authors observed that "[s]uch evidence is unique as it directly contradicts the victim–offender cycle hypothesis because it demonstrates that not all victims become offenders and, in fact, the victimizing experience contributed to their status as a nonoffender."[5] In other words, rather than

---

[1] Osman SL. (2014). Participant Sexual Victimization by an Acquaintance and Gender Predicting Empathy with an Acquaintance or Stranger Rape Victim. Journal of Social and Clinical Psychology, Vol. 33, No. 8, 2014, pp. 732-742.
[2] Osman SL. (2011). Predicting rape empathy based on victim, perpetrator, and participant gender, and history of sexual aggression. Sex Roles 64, 506–515.
[3] Id.
[4] Id.
[5] Id.

United States' Sentencing Memorandum - 9
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

making them more likely to offend against a child, being a victim of sexual abuse makes people less likely to offend because the natural empathy developed from such experiences deters such perpetuating behavior. "This, coupled with the knowledge that the majority of victims do not become sexual offenders (Salter et al., 2003), adds substantially to the argument that the pathway from victim to offender is not as direct as the literature would have us believe."[6] And studies have shown that "not all victims of childhood sexual abuse go on to sexually abuse others. In fact, the majority of victims do not go on to perpetuate the abuse."[7] "Furthermore, not all sexual offenders have a history of sexual abuse. Thus, 'sexual abuse history is neither a sufficient nor a necessary condition for adult sexual offending.'"[8]

Pilisuk's mental health issues and adverse childhood experiences do not excuse or justify the suffering she inflicted. Allowing Pilisuk's childhood to lower her sentence here so substantially would essentially be cosigning on the intergenerational transmission of trauma. The notion that the challenges faced by Pilisuk are a justification or mitigating factor for her crimes borders on offensive because it minimizes her own volition and denigrates others who have had similar life obstacles but never committed such heinous crimes. Every individual faces challenges in their life: some more severe, some less severe. But no challenge excuses or mitigates the types of vile offenses that Pilisuk committed. The victim is the one who experience challenges beyond imagination. On balance, the history and characteristics of Pilisuk make clear that he had arrived at a somewhat stable life with family support and had adequate education and financial resources to live a law-abiding life. Life circumstances did not compel her to rape and exploit children. Rather, she chose that path. Her sentence should reflect these facts.

---

[6] *Id.*
[7] *Id.* (citing Jespersen et al., 2009; Thomas & Fremouw, 2009; Widom & Ames, 1994; Salter et al., 2003).
[8] *Id.* (quoting Jespersen et al., 2009, p. 190).

United States' Sentencing Memorandum - 10
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## C. Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence

Section 3553(a)(2)(A) directs the Court to craft a sentence that reflects "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The series of decisions made by Pilisuk show us a person who lacks empathy and prioritized her brief pleasure over others' permanent pain. Giving Pilisuk the lowest possible sentence under law does not promote respect for the law or afford deterrence. It sends the message that when you abuse children, abuse as often as possible because the punishment will be the same as a single instance. It would also not be a just punishment. The Court's sentence must account for the totality of all these circumstances. It would be unfair for the Court to give far more weight to Pilisuk's childhood and future than to consider the opportunities and innocence she took from MV1.

A mandatory minimum sentence in this case is woefully insufficient and an injustice. This case is incomparable to others in this district. The years of abuse of MV1, providing him to others to sexually abuse, creating an anonymous online network on her incest website to further promote and normalize this behavior for other children.

Based on the egregious nature of Pilisuk's criminal misconduct, there is also a compelling need to deter others who would exploit and abuse children. While the stark reality borne out by countless studies, investigations, and prosecutions is that there are simply too many individuals wired to abuse children for society ever to eliminate child exploitation, the justice system still plays a vital role in ensuring that would-be offenders understand the steep cost of acting on their deviant desires. The law must send a clear and unmistakable message of specific and general deterrence—that society simply will not and cannot tolerate such perverted cruelty and violence—and those that engage in it, will be met with lengthy custodial sentences. A guideline range of life is of course not binding on the Court, but it is important to note that it is a remarkable measure of Pilisuk's

United States' Sentencing Memorandum - 11
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

criminal conduct.  A 45-year sentence is not a life sentence, and allows her an opportunity to be released when she is older and less of a threat to children.

D. **Need to Protect the Public from Further Crimes**

Pilisuk is just as dangerous to child in the community as she was the day she was arrested.  We know this because she has been completely unwavering in her claim despite strong evidence to the contrary, that she never abused MV1.  Treatment can only assist in mitigating future risk of recidivism if a person is willing to honestly confront their behavior and self-reflect.  If she cannot acknowledge the harms she caused and a need to change, she will not abstain from reoffending in the future.  The Court has no indication whatsoever that she will be able to abide by probation's conditions and conform her conduct to the law.  Rather, the evidence in this case shows she will do whatever she wants and she will take precautions to ensure she is not caught.  She was very successful at this for years.  But for MV1 being able to acknowledge the horrible truths of what happened to him, it is possible she would have been able to maintain this lie forever.

//

//

//

//

//

//

United States' Sentencing Memorandum - 12
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

For all of the reasons set forth above, the governments respectfully recommends impose a custodial sentence of 45 years, to be followed by a lifetime of supervised release.

DATED this 25th day of September, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*s/ Laura Harmon*
LAURA HARMON
Special Assistant United States Attorney
MATT HAMPTON
Assistant United States Attorney

United States' Sentencing Memorandum - 13
*United States v. Shabnam Pilisuk*, CR22-001 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970